AMOS R. PHILLIPS, Appellant, v. ST. LOUIS UNION TRUST COMPANY et al.

Division One, November 25, 1908.

1. COUNTY LANDS: Evidence of Purchase: Register's Certificate and Treasurer's Receipt. A certificate of purchase of county lands, dated May 23, 1857, signed by the county register certifying that "August E. Shields purchased of the register of this office" certain lands described, at the price of $1,729.20, and that "on presentation of this certificate to the receiver of public moneys and upon full payment to him of the said sum of $1,729.20, the said August E. Shields shall be entitled to receive a patent for said land;" and a receipt by the county treasurer reciting, "Received of Shapley R. Phillips, $2,233.74 in payment of land bought of the county by Edward Coleman, Wm. D. Waldrop and August E. Shields, and in final payment for all land they bought at the May term of our county sales in 1857," do not establish any equitable title in August E. Phillips, or in Shapley Phillips, August's assignee, to the lands described in the certificate. The certificate does not show any money was paid, and the receipt in express terms acknowledges the receipt of the purchase money for undescribed lands sold by the county to three men as tenants in common. Such evidence does not show that the lands described in the certificates were ever paid for, and therefore does not establish the legal conclusion that the county held the legal title for the benefit of August E. Phillips' heirs.

2. ———: Notice to Subsequent Purchasers. Even if the certificate of purchase and receipt of the payment of the purchase money for county lands sufficiently described the lands, yet if

the evidence fails to disclose that the subsequent grantees from the county had any knowledge or notice of the purchaser's claim of title to the lands, the court will not divest the subsequent grantees of the title.

3. ————: ————: Conflicting Testimony: Equity Case: Deference to Trial Court. Even in equity cases, where the appellate court has the right to review and weigh the evidence, the usual practice is, where there is evidence tending to prove that subsequent purchasers from the county had notice of plaintiff's prior attempt at purchase, and equally substantial evidence to the contrary, to defer largely to the finding of the trial court on that and other issues of fact, and refuse to disturb its judgment on the assignment that its findings were against the weight of the evidence.

Appeal from New Madrid Circuit Court.—*Hon. H. C. Riley*, Judge.

AFFIRMED.

*Brown & Hubbard* for appellant.

(1) The court said, in the case of Wickersham v. Woodbeck, 57 Mo. 59, that the registrar's and receiver's receipt is evidence that the State has passed the title, although the formality of a patent is wanting. The equitable title is at least passed, for the purchase money is paid, and the State cannot transfer its title, which is a mere naked legal title, to another. Where one has the equitable title to land and another obtains the legal title with knowledge of such equitable title, the former has the superior equity and the latter will be held to hold such legal title in trust for him, and under the statute of this State may be divested of such legal title without a conveyance. Sensenderfer v. Kemp, 83 Mo. 581; Bailey v. Winn, 101 Mo. 649; Grove v. Robert, 36 Mo. 523; Morton v. Blankenship, 5 Mo. 200. (2) Notwithstanding the fact that the assignment of the certificate of registry from Augustus E. Shields to Shapley R. Phillips was irregular, there is no fraud charged by defendant, and as said Phillips was the holder of

said certificate when same was presented to Geo. W. Dawson, treasurer of New Madrid county, and furnished the full consideration for the purchase of said land, which was received by said Dawson as agent of said county, and a receipt issued to Phillips showing that the county had received said money, signed by the county's agent; then said Shapley R. Phillips, or this plaintiff, claiming under him, could enforce in equity the trust which arises from those facts in the absence of anything shown to indicate a different intent of the parties. That the muniment of title held by defendant is a county patent for land does not prevent the application of that rule of equity and justice. All parties claiming this land are before the court, and there is no difficulty in giving the appropriate relief which the facts demand. Boyd v. Mammoth Springs Imp. & W. P. Co., 137 Mo. 482. The registry certificate and treasurer's receipt are prima-facie evidence of the payment of the purchase money by Shapley R. Phillips; defendant had the right, and it devolved upon him, to dispute the prima-facie case made by them. Massey v. Smith, 64 Mo. 347. (3) Upon the theory that, when the county issued the patent to defendant, defendant had notice of plaintiff's equitable title and interest in and to the lands, plaintiff introduced tax books showing that said land had been assessed to him, and the taxes paid by him as far back as the year 1883, and down to and including the year 1896. Also a copy of the partition proceedings in the circuit court of New Madrid county, in the year 1872, and which was a matter of public record, as well as evidence showing that he and those under whom he claimed have had open, notorious and exclusive possession of said lands since the year 1860, down to the present time, for such purposes as it is fit for. Actual notice, required by the statute, does not mean that there must necessarily be direct and

positive evidence of such notice. Any proper evidence tending to show it—facts and circumstances coming to one's knowledge, or of which he could have known by exercising ordinary care, that would put a man of ordinary circumspection on his inquiry, or facts that would naturally suggest it—is all that is required. Maupin v. Emmons, 47 Mo. 304; Morrison v. Judson, 145 Mo. 298; Ins. Co. v. Smith, 117 Mo. 292; Hagan v. Ellis, 4 A. & E. Dec. E. 220. (4) Under the contract made by the county to defendant and those under whom it claims, the county undertook to convey only .such swamp lands as it had title to, which was notice of itself sufficient to put defendant on inquiry. The actual notice required by the Registry Act is not certain knowledge, but such information as men generally act upon in the transactions of life. Vaughn v. Tracy, 22 Mo. 415. (5) The deed from Himmelberger and wife to Himmelberger-Luce Land & Lumber Co., dated August 11, 1899, is a quitclaim deed. The Himmelberger-Luce Land & Lumber Co. and the Himmelberger-Harrison Lumber Co., this defendant, are virtually one and the same corporation, under a reorganization. When the said Himmelberger-Luce Land & Lumber Co. received said quitclaim deed it was sufficient notice to put it on inquiry, and that it was getting only a doubtful title, and is, therefore, not an innocent purchaser for value in good faith and without notice. Stule v. Bank, 7 L. R. A. 524.

*Oliver & Oliver* for respondents.

(1) The trial court did right in excluding the blank assignment of the so-called register's receipt. Bank v. Donnell, 35 Mo. 374; Bank v. Pennington, 42 Mo. App. 355; Huguwein & Co. v. Hinds, 97 Mo. App. 352; Mayer v. Old, 51 Mo. App. 217. (2) The result would necessarily have been the same even though this blank, unsigned assignment had been ad-

mitted in evidence. No patent was ever issued by the Governor or the county court to either Shields or Phillips. There is no evidence in this record that either Shields or Phillips paid one cent for this land. Section 16 of the Act of 1855 limits the quantity of swamp land that any one man can buy, either at public auction or private entry. For all this court knows Shields or Phillips may have exhausted their rights in buying this character of land from New Madrid county, and that "may have been" the reason that no patent was ever issued for it; no triplicate register's receipt was ever given, nor was any register's receipt ever filed in Jefferson City. Stephenson v. Stephenson, 71 Mo. 127; Kelly v. Vandiver, 75 Mo. App. 438. (3) Respondents' record title to this land is perfect. Appellant concedes this in his petition and has never denied it. Secs. 8197, 8198, 8199, R. S. 1899; State ex rel. v. County Court, Wayne County, 98 Mo. 362; Railroad v. Wayne County, 125 Mo. 357; Simpson v. Stoddard County, 173 Mo. 421. (4) Respondents deny appellant's allegation that in making said patent to Himmelberger on the 25th day of May, 1899, said "county court and the county for whom it acted was misinformed, and through misinformation, oversight, accident, mistake, patented land in controversy to which said county had no right of disposal or sale, if perchance said facts were known to them." Appellant has not offered a syllable of testimony to support this allegation in his bill. Not a scintilla of testimony can be found in this record tending to prove that the court was misinformed or that it acted upon misinformation. On the contrary, this record does show that the county court did act carefully and intelligently and appointed its then clerk to make an investigation and inform it of what lands the county owned and of what lands they could convey to defendant and its

214 Sup.—43

grantors in payment of the work performed. No member of the county court was offered as a witness in support of this allegation in plaintiff's petition. Nor was there any other officer of New Madrid county or of any citizen of said county put upon the witness stand to prove the allegations. (5) If plaintiff ever had a cause of action, he is barred by laches and the Statute of Limitations. Shelby County v. Bragg, 135 Mo. 300; Funkhouser v. Lay, 78 Mo. 466; Hughes v. Littrell, 75 Mo. 573; Loomis v. Railroad, 165 Mo. 394.

WOODSON, J.—This was a bill in equity, filed in the circuit court of New Madrid county by the plaintiff against the defendants, which sought to have the legal title to two hundred and eighty acres of land located in that county divested from the defendants and invested in the plaintiff. There was a trial had before the court which resulted in a judgment in favor of the defendants. After an unsuccessful motion for a new trial, plaintiff appealed the cause to this court.

The bill was couched in the following language:

"Plaintiff states that codefendant, Himmelberger-Harrison Land Company, is a corporation organized under the laws of the State of Missouri. That the St. Louis Union Trust Company is a corporation organized under the laws of the State of Missouri. That heretofore, on May —, 1857, at the May Term of the —⸻— court of New Madrid county, Missouri, there was legally sold the land hereinafter set out and described, and that at said sale one Augustus E. Shields purchased the following described swamp lands belonging to the county of New Madrid, Missouri, to-wit: Forty acres of land, being the southeast quarter of the southwest quarter in section No. 26; also 160 acres, being the southeast quarter of section No. 26; also eighty acres, being the north half of the northeast

quarter of section No. 35, township 23, range 13, being in all 280 acres, for the price and sum of $1,729.20.

"That said lands being a part of the swamp lands granted to the State of Missouri by the United States by the Swamp Land Act of Congress, approved 27th September, 1850, and that on, to-wit, 23d day of May, 1857, after the purchase of said lands by said Shields, and under and by virtue of said purchase and the laws governing such sales, the register of swamp lands within and for said county by John T. Scott issued and delivered to said Augustus E. Shields a register certificate of purchase therefor, describing said lands then and reciting the purchase price, sale and name of purchaser, which sale and certificate of purchase was duly recorded in the register office in the records provided for by law for that purpose, which record was a public record of said county.

"That after that, to-wit, said Augustus E. Shields sold his interest in said lands to one Shapley R. Phillips and assigned and transferred his register certificate of sale to him for a valuable consideration.

"That after that, to-wit, on the 14th day of August, 1860, Shapley R. Phillips paid to George W. Dawson, the treasurer of New Madrid county, Missouri, for said county, the sum of $2,233.70, being the full amount due for the balance due on the purchase price of the above-described lands and other lands entered by Edward Coleman and Wm. D. Waldrop; and said George W. Dawson as such treasurer on said date executed and delivered to said Shapley R. Phillips his treasurer's receipt therefor, and thereby said Shapley R. Phillips became the equitable owner and had the equitable title to said lands, but the legal title remained in the county, who in equity held the same in trust for the use and benefit of said Phillips.

"That since said date, August 14, 1860, and till his death, said lands were taxed to Shapley Phillips

and he paid the taxes on same; cut and sold timber from same; and cut and used timber from same; and under his equitable title claimed the ownership thereof and made such use thereof as it was fit for.

"That said Phillips died and the property sued for with other property was set off and allotted to plaintiff in a suit in partition in the New Madrid Circuit Court in the year 1872; and has since then been held by plaintiff and taxed to plaintiff, and plaintiff has paid all taxes on same and used the same for wood and timber and for such purposes for which it was fit. And, so, he says, he and his grandfather, Shapley R. Phillips, under whom he claims, have held the equitable title claiming the property in this suit since August, 1860, using the same for such purposes for which it was fit; paying taxes on same, and that these rights and claims through all these years have been undisputed and notorious, and was known to the Himmelbergers and Luces and others who have since been grantees from the county and under them, and could have been known by ordinary inquiry, investigation and observation.

"He states that he is informed that the register record of sale of lands and register record of certificate of sale of land were destroyed by fire during the period of the Civil War, between the years 1861 and 1865.

"He further states that about the first day of December, 1885, the county court of New Madrid county, Missouri, contracted with C. L. Luce (now dead) to dig a certain ditch or drain therein described and to be finished and completed in a limited and stated time in said contract specified, and upon its completion, according to plans and specifications, within the time named, to pay therefor a stipulated sum; but not to be paid in money, but in certain swamp lands at an agreed price per acre.

"That Luce died shortly after the commencement

of said work, and said contract determined; that later on, to-wit, 20th May, 1893, said contract, with certain modifications, extensions and provisions not embodied in the original, was renewed with the heirs of C. L. Luce, namely, Elmira Luce, Ella Gould, A. B. Luce, Carrie Brown, Lilla Harrison and Frederick Rundle, by which the county of New Madrid contracted to pay to said parties on the completion of said ditch, according to the plans, within the time limited, a stipulated sum, but not in money but in such lands as the county owned valued at $1.25 per acre. That the time for completing said contract was afterward extended; and that the said Luces, with the consent of said county, assigned said contract to John H. Himmelberger.

"That after that, on the 25th May, 1899, said New Madrid county court caused a patent to be executed and signed by the president thereof, and countersigned by the clerk thereof, and to be delivered to John H. Himmelberger to the lands above described, together with a large body of other lands, in payment for said ditch, which is recorded in the recorder's office of New Madrid county, Missouri, in deed record, volume 37, page 421 and others.

"That on, towit, 11th day of August, 1899, John H. Himmelberger and wife (who had taken patent as trustee for himself and Luce heirs) executed and delivered a deed to all the lands described in said patent, including the lands in this suit, to Himmelberger-Luce Land & Lumber Company, a corporation, which is recorded in deed record, volume 37, page 449 and others.

"That on the 31st day of March, 1902, the Himmelberger-Luce Land & Lumber Company, a corporation, executed and delivered a deed for the lands patented, including the lands in this suit, to Himmelberger-Harrison Land Company, a corporation, which

deed is recorded in record of deeds, volume 41, page 517-518 and others.

"That on, to-wit, 2nd April, 1902, the Himmelberger-Harrison Land Company, a corporation, executed and delivered to St. Louis Trust Company, a corporation, a deed of trust for $350,000 to the lands patented, including the lands sued for, which deed of trust is recorded in deed records, volume 41, pages 499-500 and others.

"That on the 11th February, 1902, said St. Louis Trust Company consolidated with the Union Trust Company under the name of St. Louis Union Trust Company, which owns said notes and trust securities.

"Plaintiff further states that since the payment of the purchase price for said lands by Shapley R. Phillips to the treasurer on 14th day August, 1860, said Shapley R. Phillips became vested with the equitable title to said lands, and the legal title, held by the county in equity, was held in trust for him and his heirs and assigns. He further states that in making said patent to said Himmelberger on the 25th May, 1899, said court and the county for whom it acted was misinformed and through misinformation, oversight, accident, mistake, patented land in controversy, to which said county had no right of disposal or sale, and if perchance said fact were known to them, said act in patenting said land was a fraudulent diversion of trust property, which operates in either and both events and contingency as a fraud upon plaintiff's rights.

"That plaintiff's purchase and payment for said land was not only a matter of public record, but his claim and title were notorious through the agency of the partition suit, through the tax records and the acts of user that were notorious, extending over a period of time from 1860 to the present time, which facts were known to the county court who ordered and made the patent and to J. H. Himmelberger, and to the Himmel-

berger-Luce Land & Lumber Company, and to the
Himmelberger-Harrison Land Company, and to the
St. Louis Union Trust Company, and could have been
known by ordinary care, investigation or observation.

"That all of said titles are hurtful and damaging
clouds on plaintiff's right and estate and in fraud
thereof. Wherefore, plaintiff prays that said titles so
acquired under said several conveyances be deemed to
be held in trust for him and that the legal title to said
lands be divested out of said defendants and vested in
this plaintiff by the decree of this court and for gen-
eral equitable relief and for his costs."

The answer in substance admits that:

John H. Himmelberger took from the county of
New Madrid, as trustee, for his company, a patent to
this and other lands, in payment for the work done and
performed by his company, and its grantors, for the
county of New Madrid, under its contract with the
Luces; and avers and charges that neither Himmel-
berger nor any of the other parties under whom the
defendants claim title had any notice or knowledge of
the plaintiff's claim to this land; that both Himmel-
berger and the county court and all the parties and
persons connected with the making of said patent acted
in good faith and without any knowledge or informa-
tion whatever that the appellant had or asserted any
claim to this land.

Respondent further answered that if it was true,
as alleged by plaintiff (but defendant denied its truth-
fulness), that said land was contracted to be sold to
Augustus E. Shields, and by him to Shapley R. Phil-
lips, yet plaintiff and those under whom he claims were
grossly negligent and careless of their rights by failing
to procure a deed or patent from the county, and in
failing and neglecting to place the same on record; and
that it would be inequitable and unjust to permit the
plaintiff to now take this land from defendants who

had paid for it in good faith, and that plaintiff was guilty of gross laches.

The plaintiff introduced in evidence a certificate of purchase of the land in controversy from the register's office of New Madrid county to Augustus E. Shields, dated May 23rd, 1857, which reads as follows:

"No. —— Register's Office at New Madrid, May 23rd, 1857.

"It is hereby certified that in pursuance of law Augustus E. Shields of New Madrid county, Missouri, on the —— day purchased of the register of this office the southeast quarter of southwest quarter and southeast quarter of section No. 26, and north half of northeast quarter of section No. 35, in township No. 23, north, range No. 13 east, containing 280 acres and —— hundredths of an acre, at $——— per acre, amounting in the aggregate to seventeen hundred and twenty-nine dollars and twenty cents.

"Now, therefore, be it known that on presentation of this certificate to the receiver of public moneys for New Madrid county, and upon full payment to him of the said sum of seventeen hundred and twenty-nine dollars and twenty cents, the said Augustus E. Shields shall be entitled to receive a patent for said land.

"$1,729.20.

"(Duplicate).

"John T. Scott, Register."

He then offered in evidence the following unsigned assignment of the above certificate to Shapley R. Phillips:

"For value received, I, Augustus E. Shields, to whom the within certificate was issued, do hereby sell and assign unto Shapley R. Phillips, of New Madrid county, and to his heirs and assigns forever, the said certificate, and authorize him to receive from the county court and said county a patent therefor.

"Witness my hand and seal this —— day of June, eighteen hundred and fifty seven.

"Attest:

.(Seal.)"

The introduction of which was objected to by the defendant, and was sustained by the court. To which action of the court plaintiff duly excepted.

Plaintiff next introduced the following receipt given by the treasurer of New Madrid county to Shapley R. Phillips:

"Received of Shapley R. Phillips two thousand two hundred and thirty-three dollars and seventy-four cents in payment of land bought of the county by Edward Coleman, Wm. D. Waldrop and Augustus E. Shields, and in final payment for all land they bought at the May term of our county land sales, in 1857.

"August 14th, 1860.

"Geo. W. Dawson, Treasurer."

All record entries of this sale were destroyed by fire during the civil war between the years 1861 and 1865.

The plaintiff then introduced evidence tending to show that he was one of the heirs at law of Shapley R. Phillips, deceased; and that the land in controversy, with other large tracts lying in that county, were, in October, 1870, partioned by a decree of the circuit court of that county, and that this two hundred and eighty acres, together with other lands, were decreed and set over to him as his interest in his grandfather's estate. The evidence also tended to show that during the greater portion of the time from 1860 to 1896 the land was assessed in the name of plaintiff and those through whom he claims title, and that he and they paid all the taxes thereon during all of those years.

It is undisputed that the land is wild, uninclosed timber land, and the only open acts of ownership ex-

ercised over it were to cut and haul timber therefrom for rails and fuel.

Several witnesses testified that Phillip's possession had been exclusive, open and notorious ever since the year 1860 and that it was generally understood in the community in which the land was located that it belonged to plaintiff and his ancestors during all that time.

The pleadings allege and the uncontradicted evidence in the case shows that the legal title to the land in question is in the defendants. They also introduced evidence tending to show that they and those through whom they claim title were purchasers from the county for value and had no knowledge or notice that plaintiff had any claim, right, title or interest in or to the land prior to May 25th, 1899, the day the county patented the land to Himmelberger in payment for the construction of the ditches or drains mentioned in the pleadings.

The defendants' evidence also tended to show that before they purchased they had an abstract of title made to the land, and that it disclosed no claim of title or interest of the plaintiff to the land. Their evidence also tended to prove that the land was wild, uninclosed wood land with no one in actual possession thereof, and that there was no one exercising acts of ownership over the land prior to the date of the patent, and that defendants had no knowledge or information regarding plaintiff's said claim to the land. Defendants' evidence also tends to show that the county at all times claimed to own the land and dealt and contracted regarding it as if it was the absolute owner thereof.

I. There are many legal propositions presented for our consideration by the briefs filed in this cause; but, viewing the case as we do, it would be a useless waste of time to discuss more than one of them.

It is earnestly insisted by learned counsel for ap-

pellant that the evidence shows that Shapley R. Phillips, assignee of the Shields certificate of purchase, purchased the land in controversy from New Madrid county on August 14, 1860, as appears by the receipt of that date, signed by Geo. W. Dawson, treasurer of the county; that the payment of the purchase money by him and its acceptance by the county operated in equity as a conveyance of the equitable interest in the land to him, and that the county was thereby constituted a trustee of the legal title and held it as such for his use and benefit; and that when those through whom defendants claim acquired the title from the county by means of the patent, dated  May 25, 1899, with knowledge of the existence of plaintiff's equitable title thereto, equity would and did substitute them in lieu of the county as trustees of the legal title for the use and benefit of the plaintiff and those through whom he claims, and that a court of equity should execute the trust by divesting the legal title out of the defendants and investing it in the plaintiff.

The trial court refused to make and enter such a decree, and we think properly so, for the following reasons:

It will be observed by reading the register's certificate of sale of the land to August E. Shields, dated May 23, 1857, that Shields paid nothing whatever to John T. Scott, the register, for that certificate of purchase, and the only evidence offered tending to prove Phillips paid the county for the land described in that certificate was the receipt of Geo. W. Dawson, treasurer of the county, dated August 14, 1860.  By reading that receipt it will be seen that it does not mention the land described in the certificate of sale, dated May 23, 1857, signed by John T. Scott, register of the swamp lands, but, upon the contrary, it in express terms acknowledges the receipt of the purchase money for

lands sold by the county to Edward Coleman, Wm. D. Waldrop and Augustus E. Shields.

No court would be warranted in finding that the lands sold by the county to the three persons named in the treasurer's receipt were the same lands described in the certificate of sale, dated May 23, 1857. The legal import of the language employed in the treasurer's receipt is that those three gentlemen purchased the lands therein mentioned as tenants in common and cannot be tortured into meaning that it referred to separate tracts of land purchased by each of them in severalty. That being true, then there is no evidence that plaintiff or any of those through whom he claims title ever paid the county one cent for the land sued for; and it cannot be claimed that Phillips was the equitable owner of the land or that the county held the legal title thereto as trustee for the benefit of the plaintiff. The county, therefore, having never disposed of the legal or equitable title to the land, she had the perfect legal right to convey it to defendants' grantors.

But conceding for the sake of argument that the land purchased and paid for by Shapley R. Phillips is the same land mentioned in the treasurer's receipt, yet the evidence disclosed by this record falls far short of being strong, clear and convincing that defendants and their grantors had any knowledge or notice of plaintiff's alleged claim of title to the land. While there was some evidence introduced tending to prove that fact, yet there was evidence equally strong introduced by defendants tending to disprove that fact.

This court has repeatedly held "that where the trier of the facts has the witnesses before him, the opportunity of observing their demeanor on the witness stand and their manner in testifying places him in a much better position to judge of the weight to be given to the testimony of the respective witnesses than this court could possibly have. And

that even in equity cases, where this court has the right to review and weigh the evidence, the usual practice is to defer largely to the finding of the trial court on issues of fact and refuse to disturb a judgment of the lower court on the grounds that the findings were against the weight of the evidence." [Brecker v. Fillingham, 209 Mo. l. c. 583 and 584, and cases cited.]

The evidence in this case brings it squarely within the meaning of that rule. Then tested by that rule there can be no question about the correctness of the conclusions reached by the trial court.

Finding no substantial error in the record, the judgment of the circuit court should be affirmed, and it is so ordered.

All concur.