FANNIE NALL et al., Appellants, v. J. R. CONOVER.

**Division One, November 27, 1909.**

1. **TITLE: Common Source.** If there is an agreed common source of title, or both parties assume a common source of title, subject to certain exceptions, the plaintiff need not go back of such common source in making his case. But if no such common source of title is assumed, admitted or proven, then, under Sec. 650, R. S. 1899, in a suit to ascertain and quiet the title, plaintiff, if he relies upon his paper title, must prove his interest in the land by a continuous chain beginning with the Government.

2. ———: **Certificate of Entry: Carleton's Abstracts.** A certificate of entry of swamp lands, made from the county register's books, is not evidence of title, nor did the statute, making Carleton's abstract books evidence of title, intend that an entry therein of an abstract of such a certificate should be held to be evidence of title. The law did not provide that the county register should keep a record of certificates of purchase. It required the certificate to be made in triplicate, one given to the purchaser, one to be retained by the county register, and the other to be sent to the register of lands at Jefferson City, and on presentation by the purchaser of his certificate of purchase from the register, to the county receiver, and the payment of the money, the receiver was required to issue triplicate receipts, one for the purchaser, one to be retained in his office, and the other to be transmitted to the register of lands at Jefferson City, and then if the certificate from the county register and the receipt from the county receiver, as transmitted to the register of lands at Jefferson City, agreed with each other, the Governor caused a patent to issue. Plainly, an entry in Carleton's abstracts of an abstract of a certificate of entry "recorded in Register's Book No. 1, page 34," is not evidence of legal title, and in the absence of a showing that the money was actually paid is not evidence of equitable title.

3. ———: **Common Source.** Where plaintiff claims through one, who had no paper title, and defendant claims through that one and another, neither of whom had any paper title, it cannot be said that a common source of title was either assumed or shown, nor in this case was it admitted.

4. **QUIETING TITLE: Decree for Defendant: Limitations.** The Statute of Limitations runs against the county as to swamp lands granted to it by the State. And while defendant does not show that the county ever parted with the title, yet if he shows that his ancestor took possession under a warranty deed from one who thought he had bought from the county and held possession thereof for ten years, it is proper, in a suit against him, under Section 650, R. S. 1899, to ascertain and determine the title, for the court to decree title in him, where plaintiffs have failed to show any title.

5. **LIMITATIONS: What Shows.** Where defendant's ancestor bought four hundred acres of land, including the eighty in suit, by warranty deed, from one who thought he owned it, and moved upon the tract and cleared a part, claiming the whole, and sold the whole to another who for more than ten years actually claimed title to the whole, and lived upon a corner of it, and cultivated this corner and other portions, and got his firewood from the eighty in suit for more than ten years, got rails therefrom

for the entire farm, cut and had sawed timber therefrom, and paid taxes thereon, although it was never fenced, and later sold it to defendants who have since paid taxes thereon, and no one else has, these facts establish defendant's title by limitation.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Jere S. Gossom* and *S. J. Corbett* for appellants.

(1) The evidence in this case shows a reliance upon a common source of title by both plaintiffs and defendant, Thomas C. Powell, and this made a prima facie case for plaintiffs. Harrison Machine Works v. Bowers 200 Mo. 219; Finch v. Ullman, 105 Mo. 255; Smith v. Lindsey, 89 Mo. 76; Dixon v. Hunter, 204 Mo. 390. Carleton's abstract of title and the entries therein relative to the title of the land in question, offered by plaintiffs, without objection on the part of defendant, shows a perfect title in plaintiffs. Graton v. Land & Lumber Co., 189 Mo. 322; Harrison Machine Works v. Bowers, supra; Dixon v. Hunter, supra. This rule applies to cases under section 650, supra, as well as to cases in ejectment. Harrison Machine Works v. Bowers, supra; Graton v. Land & Lumber Co., 189 Mo. 322; Gage v. Cantwell, 191 Mo. 686. (2) Unless the defendant has acquired a better title from Thomas C. Powell than plaintiffs, then the court erred in not declaring the law as prayed for by plaintiffs at the close of all evidence in the case. From a casual observation of defendant's chain of title, it is obvious that he has totally failed to deraign his title back to Thomas C. Powell, the common source. There is nothing in the record that shows any conveyance from Thomas C. Powell, or from anyone else, to Jesse Huffman. Besides, if the defendant had intended to rely upon the title bond, he should have pleaded it. Couch v. Harp, 201 Mo. 457. (3) The court erred in permitting de-

fendant, over plaintiff's objection, to offer evidence for the purpose of establishing title by the Statute of Limitations. The Statute of Limitations was not pleaded by defendant as a defense. Stevenson v. Smith, 189 Mo. 447. (4) The court erred in permitting defendant to offer testimony attempting to show that Powell had received money for the land from William Johnson's administrator, there being no estoppel pleaded by defendant as a defense. If defendant relied upon an estoppel he should have pleaded it. Estoppel must be pleaded. Unless estoppel is pleaded it has no place in the case. Estoppel *in pais* must be specially pleaded. Keeney v. McVoy, 206 Mo. 42; Avery v. Railroad, 113 Mo. 561; Swinhart v. Railroad, 207 Mo. 423; Bray v. Marshall, 75 Mo. 330; Noble v. Blount, 77 Mo. 242.

*Ward & Collins* for respondent.

(1) If Thomas C. Powell is the common source of title there was no admission to that effect; and appellants did not undertake to show it. Thomas C. Powell had only a register's receipt. Nothing more and nothing less; and it did not even entitle him to a patent. Our contention is (a) that Thomas C. Powell, from whom appellants' ancestor bought this land, is not shown by appellants to have any title whatever in the land, because they only show that under section 4 of the law, he had selected this land and did not show under section 5 of the above law that he had paid for the land so selected. And (b) if Thomas C. Powell had selected this land and then had paid the receiver for it under section 5, he would then only have an equitable title to the land and would only be entitled to a patent by complying with section 6 of the above law; and that without complying with that law and obtaining this patent, the said Thomas C. Powell was "not the absolute owner in fee simple" and these appellants claiming under him were not the absolute owners

in fee simple, as pleaded in their petition in this case. The appellants having pleaded a fee simple title and failing to show any at all, or at best an equitable title, cannot maintain this suit. Stewart v. Lead Belt Co., 200 Mo. 281. Was the common source of title established by respondent? We admit the law to be that if the common source of title is agreed upon or is proven in the case, then all the defects incident to the title arising prior to the common source are defects common to both parties and are immaterial. Harrison Machine Works v. Bowers, 200 Mo. 235; Stewart v. Lead Belt Land Co., 200 Mo. 291; Charles v. White, 214 Mo. 211; Gage v. Cantwell, 191 Mo. 698. The question here is, did we show common source of title for appellants so as to cure the defects of appellants' title? . It is true that this title bond was made to William Johnson by Thomas C. Powell, but it was also made by John H. Powell. Does that make Thomas C. Powell the common source of title? Maybe we are claiming our title from John H. Powell. We are not required to select Thomas C. Powell merely to make out a common source of title for appellants; if they get no title through Thomas C. Powell and we are claiming from John H. Powell, they can take no advantage of the defect in John H. Powell's title. Therefore, on that score, we did not make out the common source of title for them. (2) Millard Cotton's having been in the actual, peaceful, open, continuous, adverse possession of a part of this land under color of title to the whole tract and exercising acts of ownership over the whole tract for a. period of more than 10 years, gave him fee simple title to it, which he had a right to convey, and did convey, through *mesne* conveyances to the defendant in this case. Sec. 4262, R. S. 1899; Callaway Co. v. Nolley, 31 Mo. 393; McDey v. Carr, 159 Mo. 648; Potter v. Adams, 125 Mo. 118; Bittle v. Mueller, 13 Mo. 335. The effect of a deed which

creates color of title is to extend whatever acts of possession the grantee had of the land or any part thereof, to the whole tract described in the deed. Heiman v. Bennett, 144 Mo. 117; Crisper v. Hannaben, 50 Mo. 546; Mississippi Co. v. Vowels, 101 Mo. 225; Callahan v. Davis, 103 Mo. 444; Johnson v. Prewitt, 32 Mo. 553. Payment of taxes on the land, cutting and hauling fire wood, sawing timber and making rails on this land constitutes the "usual acts of ownership." Carter v. Hornback, 139 Mo. 238; Golterman v. Schiermeyer, 111 Mo. 404; Pharis v. Jones, 122 Mo. 125. (3) The Statute of Limitation runs against a county. Dunklin Co. v. Chouteau, 120 Mo. 575; Cunningham v. Snow, 82 Mo. 587; Simpson v. Stoddard Co., 173 Mo. 421; Palmer v. Jones, 188 Mo. 163; Callaway Co. v. Nolley, 31 Mo. 393. The Supreme Court has never said in a suit to determine title under said section 650 that it was necessary to plead the Statute of Limitation in order to prove it, and we maintain that there is nothing in that contention of appellants for two reasons: (a) Respondent's first count in his answer is a denial that plaintiffs are the owners of the land; an admission that defendant claims the title; and an averment that defendant is the owner in fee and plaintiffs have no right, title or interest in the land. Now, we maintain that under that count in the answer, we can prove any facts that either go to show that defendant has no title to the property or that go to establish title to the land in respondent. We have more here than a general denial. We have a special plea that the title is in us and state what title we have. We admit we claim title to the land. We deny specially appellants' title; and we maintain that we are entitled to prove the Statute of Limitations in this suit "to try, ascertain and determine the estate, title and interest of the plaintiffs and defendant herein respectively" as pleaded by appellants. Under a general denial in ejectment suits

the defendant may show that plaintiffs never had a cause of action or that plaintiffs' claim is fraudulent; or that plaintiffs' right is barred by limitations. Patton v. Fox, 169 Mo. 97; Coleman v. Drane, 116 Mo. 387. There is more reason in permitting the Statute of Limitations to be proved in this sort of a suit than in ejectment cases, because here appellants, to make out their case, pleaded and try to prove "that defendant claims some right, title and interest in and to the land in controversy and that said claim is adverse and prejudicial to these plaintiffs; and pray the court to ascertain and determine such claims by and between the plaintiffs and defendant, respectively." Cushing v. Powell, 130 Mo. App. 576; Jones v. Rush, 156 Mo. 364; State ex rel. v. Rau, 93 Mo. 126. From the very nature of this case, much more so than in ejectment suits, defendant ought to be permitted to prove anything that would establish his title to the land. (b) Under the second count of respondent's answer, he pleads a counterclaim, which is nothing more nor less than a suit under section 650, wherein he claims to be the owner of the land in controversy and that appellants claim some right, title or interest, prejudicial to him, and prays the court to try, ascertain and determine the title between plaintiff and defendant respectively. This answer set up a good cause of action under section 650. Spore v. Ozark Land Co., 186 Mo. 656. To this counterclaim, appellants filed a general denial and, undoubtedly, on this issue we would be permitted to prove whatever title we had. Sec. 602, R. S. 1899; Knox v. Brown, 103 Mo. 223; Spurlock v. Railroad, 93 Mo. 530; Pomeroy v. Benton, 57 Mo. 531; Strauss v. Railroad, 102 Mo. App. 644; Banchor v. Gregor, 9 Mo. App. 102. (4) Appellants' contention that the court erred in permitting us to prove estoppel without pleading it, is without foundation. We did not plead estoppel and did not undertake to prove it.

GRAVES, J.—Plaintiffs, the heirs at law of Robert C. Nall, deceased, bring this action under section 650, Revised Statutes 1899, to have the court declare their interest in and to eighty acres of land in Pemiscot county. The petition is practically in usual form. Therein, they allege that Robert C. Nall was the owner in fee simple of this land and died so seized thereof, and aver that they, his heirs at law, are now "the absolute owners in fee simple and claim that title" to the real estate mentioned. They charge that defendant claims some title, estate or interest in the land, the nature of such claim being unknown. They then ask the court to ascertain and determine title.

By answer, the defendant first denies that plaintiffs were owners of the land and admits that he claims title thereto and avers that he is the owner thereof in fee. For a second count in the answer denominated "another and counterclaim" the defendant sets up what is usually found in a petition under section 650, and winds up with the usual prayer for the court to ascertain and determine title.

Reply was a general denial of all new matter in the answer.

The cause was tried before the court. By its judgment the court found and decreed the title to be in defendant, and from such judgment the plaintiffs have appealed.

Plaintiffs, to make their case, introduced in evidence the Act approved March 28, 1901, making Carleton's Abstract Books, or certified copies of the entries therein contained, evidence of land titles of Pemiscot county. There were four entries from these abstract books introduced by plaintiffs, only one of which may be required to be noted in detail. Entry No. 1 shows that the land in dispute passed by act of Congress to the State of Missouri: said act of Congress of date September 28th, 1850. Entry No. 2 shows title passing

from the State to Pemiscot county by patent dated December 24th, 1875. Entry No. 3 thus reads:

"Pemiscot County to Thomas C. Powell, Certificate of Entry No. 951, dated May 8, 1858; consideration $100; recorded in Register's Book No. 1, at page 34; lands conveyed, the West half of the North West quarter of Section No. 17, in Township No. 17 North, of Range No. 13 East."

Entry No. 4 shows a warranty deed from Thomas C. Powell and wife to Robert C. Nall, dated October 24th, 1859.

Plaintiffs then showed the death of Robert C. Nall on December 18th, 1879, and that they were his lawful heirs, and rested their case.

Defendant offered instruments affecting the title thus:

From Carleton's Abstracts, the following:

"Thomas C. Powell and John H. Powell to William Johnson. Title Bond. Dated August 15, 1857. Filed and recorded March 13, 1858. Book "A." Page 535. Consideration $480.00. Acknowledgment regular. The above Bond is for the Northwest quarter of section 17, Township 17, Range 13, East. Containing 160 acres."

Then a warranty deed from Jesse Huffman and wife to John Cotton of date January 25th, 1872, conveying this and other lands. By his deed of September 22nd, 1879, John Cotton conveyed the same lands to Milliard F. Cotton. Milliard F. Cotton conveyed the northwest quarter of section 17, township 17, range 13 east, to S. N. McAdow. This includes the land in dispute in this case. April 18th, 1895, S. N. McAdow conveyed the same land to George W. Alvey. May 15th, 1895, George W. Alvey conveyed to Nelson J. Ball the same land, except the southeast forty thereof. November 3rd, 1900, Nelson J. Ball conveys the same 120 acres to T. L. Price. May 8th, 1901, T. L. Price conveyed the same 120 acres, which includes the 80

acres in dispute in this case, to W. P. Carter. July 18th, 1903, W. P. Carter conveyed the same 120 acres to the defendant, J. R. Conover.

Defendant then proved by witnesses that Thomas C. Powell admitted that they had received the pay for the land mentioned in the bond for a deed. They also showed by parol that the same land was sold at an administrator's sale of the William Johnson estate, and that Jesse Huffman was the purchaser.

In addition to the record title above disclosed and to the facts above stated, the defendant attempted to show title under the Statute of Limitations. In so doing, it appears that most of the active parties were dead. Johnson was dead, Powell was dead, Huffman was dead, in fact all of the leading factors in the transaction were shown to be dead.

It was shown, however, that Jesse Huffman, the alleged purchaser at the administrator's sale of William Johnson, deceased, sold and conveyed about four hundred acres of land to John Cotton, which land was contiguous, and which tract included the eighty acres in dispute. This transfer, as above indicated, was by a warranty deed in January, 1872. Later, in September, 1879, John Cotton conveyed the same lands to his son, Milliard F. Cotton. This tract of four hundred acres or more included lands in section 18 and section 17 and section 20 in township 17, range 13 east, so situated as to be one contiguous body. It is shown by the evidence that John Cotton had built a house and cleared the land on that small portion thereof located in section 20. He had also cleared a portion of the east half of the southwest quarter of section 18, which corners with the land in dispute in section 17. Milliard F. Cotton, upon his purchase, took and held the possession of the entire tract from the date of his deed on to the time he sold it as indicated in the record evidence above stated. By the parol proof it was further shown that Milliard F. Cotton claimed the land in question

in connection with his whole tract, hereinabove mentioned; that he actually lived upon and farmed a part of the four hundred acres cornering with the eighty in dispute, and that in connection with said occupancy he used the eighty in dispute for the purpose of obtaining firewood and rails for the balance of his farm and in addition cut and sold timber therefrom. In addition to these facts, it appears that Milliard F. Cotton so occupied and claimed said land from the date of his deed in 1879 to his conveyance thereof in April, 1895. Tax receipts were introduced showing payment of taxes on this land by Milliard F. Cotton from 1889 up to and including 1896, and further that from that time on his subsequent grantees likewise paid the taxes up to the time of this suit. There is no evidence as to what John Cotton did toward payment of taxes, but there is evidence showing that he took possession of and cleared portions of the four hundred acres of land located in sections 20 and 18.

It must be borne in mind that all the records were destroyed when the court house of Pemiscot county was burned in 1882, which of course included the probate records and the tax records prior thereto. There is no evidence of a substantial character tending to show that the plaintiffs or any of them, or their predecessors in title, ever paid any taxes on this land.

There is substantial evidence tending to show that John Cotton claimed the entire tract from the date of the deed from Jesse Huffman and much stronger evidence tending to show that Milliard F. Cotton claimed title to this land and exercised acts of ownership thereover from the date of his deed in September, 1879.

This substantially states all facts necessary for a disposition of the cause.

I. As a preliminary question it should be determined whether or not there is a common source of title proven and if so what such common source of title is,

for the record contains no admitted common source of title. To the end of fully discussing this point, we have set out in full the two record entries bearing thereon. The plaintiffs claim that a common source of title has been established by the proof. That such common source of title is Thomas C. Powell. In this contention they rely upon record entry No. 3 introduced by them, which shows a certificate of entry No. 951 to Thomas C. Powell, as recorded in Register's Book No. 1 at page 34. To this certificate of entry they add the title bond executed by Thomas C. Powell and John H. Powell to William Johnson, the record of which was introduced by the defendant.

We agree with the doctrine of Harrison Machine Works v. Bowers, 200 Mo. l. c. 235, wherein Judge LAMM in effect held that the trend of our cases was to the effect that if there was an agreed common source of title, or both parties assume a common source of title, subject to certain exceptions, the plaintiff need not go back of such common source in making his case. It should be added now that if no such common source of title is assumed, admitted or proven, then, under section 650, the plaintiff must prove his interest in the land beginning with the Government. In other words, if he relies upon a paper title, as in this case, such paper title must be complete and adequate. To start with, the plaintiffs in this case were not relying upon an admitted common source of title, nor upon an assumed common source of title, nor did they attempt to prove a common source of title. When they closed their case they relied upon what they thought was a clear paper title, when supplemented by proof of the death of deceased and proof that they were the legal heirs of the last grantee in their chain of title. Had they stopped there, as they did, and the defendant stopped at the same point, and had there been a missing link from their chain, the court could not have declared title in them. The question now is, was there

a missing link in the chain of title as evidenced by the record evidence, and further if so has the defendant's evidence supplemented theirs so as to change the result?

Let us take first the paper title of the plaintiffs. One link of that title was a register's certificate under the Act approved March 1, 1855. Section 4 of that act reads: "When any of said lands shall be sold in any of the modes pointed out in this act, the register shall make triplicate certificates of the fact, describing the land so sold by its numbers and quantity, to whom sold, and the amount of the purchase money per acre, and in the aggregate—one of which certificates he shall deliver to the purchaser, file one in his office, and transmit the other to the Register of Lands at Jefferson City, with an abstract containing the number of the certificate, the name of the purchaser, the number of the land, and the amount of purchase money."

From the certificate, or rather the copy from Carleton's Abstract Books, it would appear that Thomas C. Powell had taken the first step toward purchasing the land in question. But section 5 of the same act provides a further step to be taken. This section reads: "When a certificate of purchase shall be presented to the Receiver of Public Moneys, and the money paid, he shall issue triplicate receipts to the purchaser, stating the numbers and quantity of the land, the name of the purchaser, and the amount paid per acre, and in the aggregate—one of which receipts shall be delivered to the purchaser, one filed in his office, and the other transmitted to the Register of Lands at Jefferson City, with such an abstract as is required to be transmitted by the Register in the next preceding section."

And section 6 of the same act further provides: "Upon the receipt of said certificates, receipts and abstracts at the office of Register of Lands at Jefferson City, agreeing with each other, the Governor shall

cause a patent to be issued to the purchaser for the lands he shall have purchased.''

The record in this case fails to show any patent to Powell. It fails to show any compliance with section 5 of the act, set out, *supra*. It only shows that under section 4 of the act, *supra*, Powell selected or located the land as a purchaser. Of course, had it been proved that Powell, in pursuance of his selection or location as evidenced by the certificate of the register, had followed it up by a payment of the amount to the receiver of public moneys as provided in section 5, then there would have been in him an equitable title, even though a patent had not issued as provided for by section 6, *supra*. But such is not this case. Two questions are here presented, (1) is the register's book of selections or locations, such a book affecting land titles as was contemplated by the Act of 1901, which made Carleton's Abstracts evidence of title, and (2) even if it is such a book, does the mere selection or location for purchase of a tract of land, evidence any title, either legal or equitable, until something further is done?

An examination of the Act approved March 1st, 1855, will show that it relates to ten counties, of which Pemiscot is one. The act provides that as to all the counties named therein, except Scott, Dunklin and Pemiscot, the county clerk shall be *ex officio* register of lands, and the county treasurer shall be *ex officio* receiver of public moneys. In the three excepted counties, i. e., Scott, Dunklin and Pemiscot, a register of lands and a receiver of public moneys were to be elected by the voters. They were required to give bond, but not a word said about their keeping a record, either public or private. Not being a record required to be kept by law, we hardly see how a mere abstract thereof can be made evidence of land titles, any more than the abstract of any other private record or memoranda. Nor do we think that when the Act of 1901 togeth-

er with its preamble was passed, it was intended to make Carleton's Abstract Books evidence of title further than they undertook to abstract instruments affecting titles which were required to be made public by record. But we need not pass upon this question now. The other matter is fatal to the paper title of plaintiffs. The only thing that plaintiffs claim is a certificate of purchase as provided in section 4, *supra*. These certificates are made out in triplicate, one going to the purchaser, one to be retained by the register, and one to be sent to the register of lands at Jefferson City. No provision here for any other record, except the copies aforesaid. Then by section 5, *supra,* when the purchaser presents his certificate of purchase from the register to the receiver, and pays the money, then the receiver issues triplicate receipts, one to the purchaser, one to be retained at his office and the other to be transmitted to the register of lands at Jefferson City. Then by section 6, *supra,* if the certificate from the county register and the receipt from the county receiver as transmitted to the register of lands at Jefferson City agree with each other, then the Governor caused a patent to issue.

It is clear under this law that the plaintiffs failed by their entry No. 3 from Carleton's Abstracts to show either a legal or equitable estate. No attempt is made to prove the loss of the triplicate certificates, for at least one of them should have been in Jefferson City. No attempt to prove payment, either from the Receiver's Books, or from the triplicate copy of the receipt on file in Jefferson City, if in fact any payment was made. No patent was in evidence. Had it been shown that the money had been paid, an equitable title might have resulted from that proof, but there is no such proof or even an attempt to make it. Under the proof presented by the plaintiffs neither legal nor equitable title was established in plaintiffs. Certificates of this

character were held in judgment by this court in the recent case of Phillips v. Trust Co., 214 Mo. 669.

II.   It thus appears that there is a missing link in plaintiffs' chain of title, and therefore no decree could go for them unless there was a proven common source of title, behind which neither party could go.   There is no admitted common source of title, and we think no assumed common source of title, because defendant by way of defense and in support of his cross-bill undertook to prove title by adverse possession under the ten-year Statute of Limitations. Going to the evidence as to whether or not it shows a common source of title, we find that plaintiffs claim under a certificate of purchase from Pemiscot county to Thomas C. Powell of date May 8th, 1858.   The only thing outside of the Statute of Limitations introduced by defendant, is a title bond executed by Thomas C. Powell and John H. Powell to William Johnson, of date August 15, 1857, and by parol and record evidence they undertake to deraign title from that title bond forward. Whether they did so or not is immaterial on the question under discussion now.   Does this record evidence prove a common source of title?   We think not.   Plaintiffs claim through Thomas C. Powell alone.   Defendant attempted to deraign title from Thomas C. Powell and John H. Powell.   There is a difference between a single grantor and two grantors.   Plaintiffs claim through one, who had no paper title, and defendant claims through two, neither of whom had a paper title.   Under these circumstances it cannot be said that a common source of title was either assumed or shown.   Nor was such admitted.

In Phillips v. Trust Co., *supra,* we had to deal with a certificate of purchase in New Madrid county, which is one of the ten counties mentioned in the Act of 1855.   One August E. Shields had a certificate of

purchase. This he assigned to Shapley R. Phillips. The following receipt was introduced in evidence:

"Received of Shapley R. Phillips two thousand two hundred and thirty-three dollars and seventy-four cents in payment of land bought of the county by Edward Coleman, Wm. D. Waldrop and Augustus E. Shields, and in final payment for all land they bought at the May term, of our county land sales, in 1857.

"August 14, 1860.

"Geo. W. Dawson, Treasurer."

Phillips was depending upon that receipt in conjunction with his assigned certificate from Shields for title or at least equitable title. Discussing this receipt this court then said:

"It will be observed by reading the Register's certificate of sale of the land to August E. Shields, dated May 23, 1857, that Shields paid nothing whatever to John T. Scott, the register, for that certificate of purchase, and the only evidence offered tending to prove Phillips paid the county for the land described in that certificate was the receipt of George W. Dawson, treasurer of the county, dated August 14, 1860. By reading that receipt it will be seen that it does not mention the land described in the certificate of sale, dated May 23, 1857, signed by John T. Scott, register of the swamp lands, but, upon the contrary, it in express terms acknowledges the receipt of the purchase money for lands sold by the county to Edward Coleman, Wm. D. Waldrop and Augustus E. Shields.

"No court could be warranted in finding that the lands sold by the county to the three persons named in the treasurer's receipt were the same lands described in the certificate of sale, dated May 23, 1857. The legal import of the language employed in the treasurer's receipt is that those three gentlemen purchased the lands therein mentioned as tenants in common and cannot be tortured into meaning that it re-

ferred to separate tracts of land purchased by each of them in severalty. That being true, then there is no evidence that plaintiff or any of those through whom he claims title ever paid the county one cent for the land sued for; and it cannot be claimed that Phillips was the equitable owner of the land or that the county held the legal title thereto as trustee for the benefit of the plaintiff. The county, therefore, having never disposed of the legal or equitable title to the land, she had the perfect legal right to convey it to defendant's grantors.''

So in this case it cannot be said that when one party relies upon Thomas C. Powell alone for title, and the other relies upon Thomas C. Powell and John H. Powell, there has been proven a common source of title. Therefore the evidence failing to show either an admitted, an assumed or a proven common source of title, and the plaintiffs having relied upon their paper title alone, they must fail unless they show a clear record or paper title. This they failed to do, there being absent one link in their chain of title. There was no error in the judgment wherein it held that plaintiffs had no title to the land involved herein.

III. Was the decree right in decreeing title to the defendant? We think so.

Concede that plaintiffs have failed to deraign title from the county, and concede further that defendant has failed to deraign by conveyances a title from the county, then how stands the case? Plaintiffs claim that the common source of title is Thomas C. Powell, but the evidence shows that they did not rely thereupon and attempted to deraign title from the government. Taking the proof both pro and con, it does show that Pemiscot county owned the land. It fails to show that by legal conveyance either the legal or equitable title passed from the county. It did not pass to Thomas C. Powell, as we have hereinabove

shown. Neither did it pass to Thomas C. Powell and John H. Powell, so far as disclosed by this evidence. But whilst this is true, the Statute of Limitations will run against a county. In the case of Dunklin Co. v. Chouteau, 120 Mo. l. c. 595, it is said: "Distinction must also be made between property held for strictly public purposes, as for streets, parks, commons and the like, and property held by the corporation in its private character. [2 Dill. on Munic. Corp., sec. 675.] This distinction is made in our present Statute of Limitations. [R. S. 1889, sec. 6772.] These swamp lands would not come within the terms of that section, and hence the Statute of Limitations would run in favor of one in adverse possession, even as against the county."

It should be remembered that Dunklin county is one of the ten counties coming under the Act of 1855, as is also Pemiscot county.

Conceding then, as this case and others hold, that the Statute of Limitations will run against the county, it then becomes necessary to consider, in behalf of the defendant, whether or not either he or he and his predecessors in title have acquired title by adverse possession as against the county. We need not in this inquiry consider plaintiffs and their immediate predecessor in title, because they never acquired even an equitable title against the county. Under the proof, John Cotton in 1872, by warranty deed, acquired what he evidently thought was title to four hundred acres of land in one contiguous body. On this tract he moved and cleared a portion thereof, claiming the whole. A part of the land actually cleared and cultivated by him was in section 18, which adjoined to the west the land in dispute. In 1879 and whilst plaintiffs' predecessor was yet living, this land (four hundred acres) was conveyed to Milliard F. Cotton, and he, as the proof shows, for much more than ten years actually claimed title to the whole tract and lived upon one corner of the

tract, and cultivated this corner and other portions of the four hundred acres. As to the land in question, he got for more than ten years his firewood therefrom; he got his rails therefrom for his entire farm, including the tract in dispute, although the tract in dispute was never fenced; he cut and had sawed timber therefrom; he cut and sold timber therefrom; he paid the taxes thereon, and his successors in title have paid the taxes thereon since his conveyance. Plaintiffs and their predecessor in title have paid no taxes, as shown by the evidence. There are some general statements of paying taxes upon this and other lands owned by Mr. Nall, but no county officer could find a record thereof, and the testimony is nothing more than mere hearsay. Under the evidence in this record, we are of opinion that when John Cotton in 1872 took possession of this tract of four hundred acres, including the land in dispute, under a warranty deed from Jesse Huffman, he took possession of the whole tract, and when his son followed in the possession in 1879, he likewise was in the possession of the whole tract, and that prior to the time Milliard F. Cotton conveyed, a complete title, under the Statute of Limitations, had ripened in him, and when he conveyed he conveyed a complete title in fee simple, which title has regularly passed by *mesne conveyances* to the defendant herein.

So believing, the judgment below is correct and should be and is affirmed. All concur.