HENRY  BISHOP  et al.  v.  CARL  BLOCKER, Appellant.

**Division Two, July 1, 1911.**

1. QUIETING TITLE: Common Source: Through Different Persons. Where plaintiffs claim title through one Wright as some of his devisees under his will, and defendant claims as purchaser from two other persons, and testifies for plaintiffs that after he purchased he was sued by some of the heirs of Wright, and he settled with them by compromise, and merely to quiet title, that they permitted judgment to go in his favor, and that he did not claim under them but under his prior grantors—all the records of the county being burnt—no common source of title is shown.

2. ————: ————: Carleton's Abstracts: Certificate of Entry. An entry in Carleton's Abstracts, namely, "No. 3. Pemiscot County to Matthew Wright. Certificate of Entry No. 1185, dated January 27th, 1859; filed in Register's Book One, page 40; consideration, $300," and describing the swamp land sued for, does not show any title, legal or equitable, in Wright, and hence none in his heirs; and as they (the plaintiffs) and defendant do not claim through a common source of title, and there is no other showing of title in Wright, a judgment for plaintiffs cannot stand. There is no showing that Wright ever paid anything for the land, or was entitled to a patent from the State.

Appeal from Pemiscot Circuit Court.— *Hon. Henry C. Riley*, Judge.

REVERSED.

*Faris & Oliver* and *Ward & Collins* for appellant.

The finding and judgment of the court is against the law and the evidence. No common source of title was admitted in the trial, none was agreed upon and none was proved; respondents claim no title by adverse possession, in fact they never had any possession of the land; therefore, if respondents recover at all, they must recover upon their paper title, which must show in them a legal or fee simple title. The offering of Entry No. 3 of Carleton's Abstracts was not competent for the reason that this register, who issued that certificate, held his office by virtue and authority of a local law found in Laws 1855, p. 154, which act was not offered in evidence; and for the reason that that entry absolutely proved nothing to establish land title. That entry, read in the light of the law as it existed, simply means that Matthew Wright had a register's receipt, nothing more and nothing less, which would not give him equitable, much less legal title, and would not entitle him to a patent, because under the Swamp Land Law, 1855, there were two offices created in Pemiscot county, a register and a receiver, and under that law any person could go to the register and get a certificate without paying one cent and without becoming liable to pay to anyone in the world anything; this act of getting a certificate from the register, as was done in this entry No. 3, offered in this case, only indicated that the "would-be" purchaser had selected this particular land, for which he was to pay the consideration therein named of $300. Here Matthew Wright stopped, as shown by the record; but to get an equitable title, even, he must have taken the certificate of the register (a copy of which the register kept, and a copy

of which was sent to the Register of Lands at Jefferson City) to the Receiver of Public Money and there have paid the receiver the $300 consideration mentioned in the register's receipt, and then obtained from the receiver a receiver's receipt, which receipt (not the register's certificate) gave him an equitable interest in the land; and this register's certificate and the receiver's receipt could be sent to the State Register of Lands at Jefferson City and a patent would be issued thereon to the purchaser. Laws 1855, p. 154, secs. 4, 5, 6; Nall v. Conover, 223 Mo. 477.

ROY, C.—On January 1, 1906, the following petition was filed by plaintiffs in the circuit court of Pemiscot county:

"Plaintiffs state that they are the owners in fee and claim title to the following described lands situated in the county of Pemiscot, State of Missouri, to-wit: The southwest quarter, the east half of the northwest quarter and the southwest quarter of the northwest of section eight, in township seventeen north, of range twelve east.

"Plaintiffs further state that the defendant claims some right, title, interest and estate in and to said lands, and that said claim is adverse and prejudicial to plaintiffs.

"Wherefore, plaintiffs pray the court to ascertain and determine the estate, title and interest of the parties hereto, respectively, in and to such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties, plaintiffs and defendants, severally, in and to such real estate."

On February 20, 1906, defendant filed the following answer:

"For such answer defendant admits that he claims some right, title and interest in and to the lands described in and set out in plaintiff's petition, but denies that plaintiffs, or any of them, have any right,

title or interest whatever in and to said lands, and that defendant herein is the sole and only owner of all interest rights and equities in and to the same."

The cause was tried July 30, 1906.

It was agreed that the deed records of Pemiscot county were destroyed by fire in December, 1882.

Plaintiffs introduced the following evidence:

(1)    Session Laws 1901, pages 251 and 253, inclusive—a special and local law attempting to make Carleton's Abstracts competent testimony to establish land title in Pemiscot county, Missouri.

(2)    The United States to State of Missouri. Grant by Congress, September 28, 1850, conveying the swamp lands to the State.

(3)    State of Missouri to Pemiscot county. Patent. Conveying the land in controversy and other lands to Pemiscot county.

(4)    From Carleton's Abstracts, Entry No. 3, as follows: "No. 3. Pemiscot County to Matthew Wright. Certificate of Entry No. 1185, dated January 27, 1859; filed in Register's Book One, page 40, consideration $300. The above certificate of entry conveys the southwest quarter and the east half of the northwest quarter of section 8, township 17, range 12."

(5)    Entry No. 4 of Carleton's Abstracts. Exactly like the above quoted entry, with the exception it described another 40 acres of land in controversy.

(6)    The last will of Matthew Wright. Third item in said will is the only one having any relation to the land in controversy and is as follows:

"I do hereby bequeath unto my beloved wife, Elizabeth Ann Wright, for her use, benefit and behoof during her natural life, all the balance of my real estate and personal property not hereinbefore bequeathed, and after her death, all the property, both real and personal, of which she was seized at the time of her death by virtue of this, my last will and testament, shall be equally divided between the lawful heirs of the said

Elizabeth Ann Wright and the lawful heirs of the testator, the aforesaid Matthew Wright.''

Also the testimony of Carl Bloker, who testified:

"That he was the defendant and claimed this land under a deed from Worst and Brinkerhoff; that some parties claiming to be the heirs of Matthew Wright had sued him and he bought them out in a compromise and let the judgment go for the defendant (himself); that he had had possession of the land two or three years; had cleared up about 50 acres of it and had paid all the taxes on it since 1902. That he had made the settlement with the parties who had sued him prior to this suit, merely to quiet his title and as a compromise, but that he was still relying upon the title he got through Worst and Brinkerhoff. And that his claim to this land through Worst and Brinkerhoff was of long standing and long prior to the compromise settlement made in the other lawsuit.''

And the testimony of Sarah Kimes and Mrs. John C. Parks to the effect that Matthew Wright died in 1866 and Elizabeth Ann Wright in 1892 and tending to show that plaintiffs were a portion of the heirs of said Wright.

The court found and decreed that plaintiff, Mrs.— Hampton, is entitled to an undivided sixteenth, and plaintiffs Henry Bishop, Mrs. Ella Farmer, Mrs. Emma Timberman and Mrs. Sarah Kimes are each entitled to an undivided twentieth, and the defendant to fifty-nine eightieths of the land.

Defendant has perfected his appeal.

Since the opinion was written in the case of Nall v. Conover, 223 Mo. 477, there is no foundation on which the judgment in this case can stand.

There was no common source of title. The defendant's evidence shows that he relied on his title which he got through Worst and Brinkerhoff, and that he had settled with some of the Wright heirs who had sued him merely to quiet his title as a compromise.

GRAVES, J., said in the Nall case, supra (l. c. 492): "Does this record evidence prove a common source of title? We think not. Plaintiffs claim under Thomas C. Powell alone. Defendant attempted to deraign title from Thomas C. Powell and John H. Powell. There is a difference between a single grantor and two grantors. Plaintiffs claim through one, who had no paper title, and defendant claims through two, neither of whom had a paper title. Under such circumstances it cannot be said that a common source of title was either assumed or shown."

The plaintiffs failed to prove either legal or equitable title in themselves. The certificate of entry read in evidence was no showing of title, and no showing that Matthew Wright ever paid anything for the land, or was entitled to a patent.

In Nall v. Conover, 223 Mo. l. c. 491, GRAVES, J., says: "It is clear under this law that the plaintiffs failed by their entry No. 3 from Carelton's Abstracts to show either a legal or equitable estate. No attempt is made to prove the loss of the triplicate certificates, for at least one of them should have been in Jefferson City. No attempt to prove payment, either from the Receiver's Books, or from the triplicate copy of the receipt on file in Jefferson City, if in fact any payment was made. No patent was in evidence. Had it been shown that the money had been paid, an equitable title might have resulted from that proof, but there is no such proof or even an attempt to make it. Under the proof presented by the plaintiffs neither legal nor equitable title was established in plaintiffs. Certificates of this character were held in judgment by this court in the recent case of Phillips v. Trust Co., 214 Mo. 669."

The judgment is reversed. *Bond, C.*, concurs.

PER CURIAM.—The foregoing report of the commissioners is hereby adopted as the opinion of the court.